**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ABDULWALI ABDUKHAD MUSE, | |
| Petitioner, | |
| v. | Civil Action No.:  ABA-25-2884 |
| WARDEN, FCI CUMBERLAND, | |
| Respondent. | |

**MEMORANDUM OPINION**

Petitioner Abdulwali Abdukhad Muse, who was convicted in 2011 in the U.S. District Court for the Southern District of New York of hijacking a ship, conspiracy to hijack three ships, hostage taking, conspiracy to engage in hostage taking, kidnapping, and conspiracy to engage in kidnapping, has been held in a Communications Management Unit ("CMU") of the Bureau of Prisons since 2020. In June 2025, BOP transferred Muse to the CMU at FCI-Cumberland in Cumberland, Maryland. He filed what was construed as a petition for a writ of habeas corpus in the Southern District of New York, which was transferred to this District given that his current place of incarceration is in Maryland. The Warden of FCI-Cumberland, M.J. Bayless, has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  ECF No. 17.  Although he was advised of his right to file an opposition response, Petitioner Abdulwali Abdukhad Muse has not opposed the motion.  ECF No. 18.  For the reasons that follow, the petition must be dismissed without prejudice as unexhausted.

## I.     BACKGROUND

Muse filed his petition (in the United States District Court for the Southern District of New York) via letter in August 2025, stating that he had been placed in the CMU program in Terre

Haute, Indiana and had remained in the program for five years.  ECF No. 1 at 1.  He informed the New York court that he did not want to be in the program and was refusing to accept a cellmate while being housed in the CMU.  *Id*.  As noted above, at the time Muse sent his letter he had been transferred to FCI-Cumberland, where he was also assigned to a CMU program and was regularly receiving disciplinary reports for refusing to move into a cell with a cellmate.  *Id*. at 1–2.  Because this Court has jurisdiction over the Warden of FCI-Cumberland, the case was transferred.  ECF No. 4.

The Southern District of New York construed Muse's August 2025 letter as a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 2.  Muse did not use pre-printed forms or indicate in his letter that he wanted it to be construed as a 2241 petition.  Muse explained that he was placed in the "ECR (Enhance Classification Range) [sic]" for refusing a cellmate and every week he was given an incident report resulting in six months of restricted phone, email, visitation, and other privileges.  ECF No. 1 at 2.  He estimated that he will lose 15 years of phone, email, visitation and other privileges in six months because prison staff insist on issuing incident reports for the same issue repeatedly.  *Id*.  He asked to be transferred to a "normal prison" and added that his mother would likely never hear from him again if he cannot contact her for fifteen years, given her advanced age.  *Id*.  At the time Muse wrote his letter, he stated that he was protesting the manner in which he was being treated by going on a hunger strike.  *Id*.

At the Court's direction Respondent filed a status report regarding Muse's medical condition, supported by medical records.  ECF No. 10, 14.  That report, filed on November 5, 2025, indicated that Muse ended his hunger strike on August 22, 2025, and that there were plans to review his designation to the CMU in January 2026.  ECF No. 10 at 4-5.  Based on that report, the Court ordered a follow-up status report regarding the results of Muse's January 2026 review

2

and further required certification that the Court's Order, as well as the status report filed by counsel, were personally served on Muse, in part because of the absence of any further pleadings or response from Muse.  ECF No. 15.

The status report, filed on January 27, 2026, provides the following information regarding Muse's placement in the CMU:

> Petitioner's most recent program review was conducted on December 16, 2025, and it was determined Petitioner's placement in the Communications Management Unit ("CMU") remains appropriate at this time.  *See* Attachment 1, Individualized Needs Plan (dated December 16, 2025).  In accordance with Bureau of Prisons' Program Statement 5100.08, *Inmate Security Designation and Custody Classification*, inmates are placed in facilities that match their security and program needs through an objective classification system that also incorporates professional staff judgment.  By systematically reviewing these classifications, staff maintain a safer environment for inmates and personnel while protecting the public from risk.

ECF No. 16 at 2.  The status report does not include the December 16, 2025 "Individualized Needs Plan" as indicated.

On January 27, 2026, Respondent also filed the pending Motion to Dismiss or, in the Alternative, for Summary Judgment asserting that the subject matter of Muse's petition is not cognizable under 28 U.S.C. § 2241, that loss of institutional privileges does not implicate a liberty interest, and also that Muse has failed to exhaust administrative remedies.  ECF No. 17-1. Respondent also explains that a "CMU is a general population housing unit where inmates ordinarily reside, eat, and participate in all educational, recreational, religious, visiting, unit management, and work programming, within the confines of the CMU." *Id*. at 4, citing 28 C.F.R. §§ 540.200(b)-(c).  The purpose of the CMU is to enable staff to monitor communication between inmates who are confined to the CMU and members of the community.  *Id*.  According to Respondent, the purpose of monitoring communications is to "ensure the safety, security, and orderly operation of correctional facilities, and protection of the public."  *Id*.  To that end, the

"volume, frequency, and methods" by which CMU inmates may communicate with members of the community are limited to achieve the goal "consistent with 28 C.F.R. § 540.200, *et seq.*" *Id.*

According to a declaration Respondent attached to the motion, Muse had received seven incident reports as of the date of filing. ECF No. 17-2 at 3 ¶ 9. The two incident reports included with Respondent's motion charged him with "306 - refusing work/pgm assignment" and "307 – refusing to obey an order" on June 12 and 20, 2025. *Id.* at 13-16 and 18-21. According to the declaration provided, however, Muse received similar incident reports on June 25, July 11, August 1, August 14, and August 15, 2025. *Id.* at 3 ¶ 9.

For the June 12, 2025 incident report, Muse admitted that he refused to go into a cell with someone else but "did not refuse a program" and he was found guilty of refusing to work or participate in a program. *Id.* at 16. The sanction imposed was 30 days loss of commissary. *Id.* Muse appealed the guilty finding in Request for Administrative Remedy #1245956-F1, arguing that although he was found guilty of refusing to participate in a program, he never refused to do. *Id.* at 14. His appeal was denied by Warden Bayless for the following reasons:

> Elements of prohibited acts are the definitions of the conduct which constitutes commission of the prohibited acts. The Elements of the Offense for Code 306, states "declining or expressing a determination not to perform assigned tasks; also, includes program assignments like general population and educational classes." There is sufficient evidence in the incident report to support the finding you committed the prohibited act of Code 306. The UDC's decision was based upon the reporting officer's statement, where he instructed you to return to your assigned cell for count and you refused. You admit you refused the order.

*Id.* at 13. Muse was advised that he could appeal the response to the Regional Director, Bureau of Prisons, Mid-Atlantic Regional Office and he was provided with the address. *Id.* He did not file an appeal. *Id.* at 4,¶ 12.

A similar pattern occurred with the June 20, 2025 incident report. ECF No. 17-2 at 18-21. Muse was again found guilty of violating Code 306 after he was given an order to return to general

population and he responded that he was "not coming out." *Id*. at 20-21.  He was sanctioned with 30 days' loss of phone privileges.  *Id*. at 21.  Muse again challenged the guilty finding because in his view he was not ordered to participate in a program.  *Id*. at 19.  The Request for Administrative Remedy #1245957-F1 was denied for the same reason his prior request was denied.  *Id*. at 18. Muse did not appeal the denial.  *Id*. at 4 ¶ 13.

On August 20, 2025, Muse filed Administrative Remedy No. 1251535-F1, seeking his release from CMU because he had been assigned to CMU for five years without a "communication incident report."  *Id*. at 24.  He added that he had been on a hunger strike for 32 days because of the program and pleaded for mercy so that he would not die in prison.  *Id*.  The Administrative Remedy was denied with a general explanation of the review process for CMU designation, the regularly scheduled program review by his Unit Team, and the "multi-level evaluation" relied on to determine whether to remove him from CMU or transfer him to general population.  *Id*. at 26. Muse filed an appeal of this response on September 10, 2025, with the Mid-Atlantic Regional Office.  *Id*. at 4 ¶ 14.  The appeal was accepted but no response had been processed as of the date of Respondent's motion; Muse has not appealed to the National Inmate Appeals Administrator in the Central Officer regarding the non-response.  *Id*.

Muse also filed an Administrative Remedy on August 20, 2025, seeking his removal from the double-cell requirement.  ECF No. 17-2 at 28-30.  Muse complained that the double cell restriction "psychology put on me … is doing more harm than good."  *Id*. at 29.  He stated that he felt like he was being "watched all day and night."  *Id*.  His request was denied because the "Psychology Services Branch has determined the double celling of inmates is a safety measure shown to reduce suicide within incarcerated populations."  *Id*. at 28.  Although Warden Bayless concedes in the response that "single cell placement is assessed on an individual, case-by-case

basis," she advised that "placement in a double cell is always preferred." *Id*. Muse did not file an appeal of this denial. *Id*. at 5 ¶ 15.

## II.    STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff," or here the petitioner. *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint [or petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint [or petition] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a petition "will not be dismissed as long as [it] provides sufficient detail about [the petitioner's] claim to show that [the petitioner] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

6

## III.    DISCUSSION

Although this Court's power to entertain a petition for writ of habeas corpus under 28 U.S.C. § 2241 is broad, it "has long been established that the district court's discretion to entertain habeas petitions and exercise the power of the writ is not boundless." *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010). "[P]rudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quotations omitted). Such is the case where there has been a failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies before seeking habeas review under § 2241, unless an exception to the exhaustion requirement applies. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms*, 627 F.3d at 530–33 (same); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031, at *1 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); *Henderson v. Warden, Edgefield Satellite Prison Camp*, No. 2:09-cv-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the Bureau of Prisons before filing an action pursuant to § 2241.").

The Bureau of Prisons' Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See*

7

28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to his formal written complaint, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel in Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, and to conserve judicial resources, *McCarthy*, 503 U.S. at 145–46.

Although Muse filed administrative remedy complaints relevant to his assignment to CMU, he did not exhaust them through the entire process. Only one of his complaints was appealed beyond the warden's level, but that appeal, as well as the initial complaint, took place long after this case was opened and proceeding. Exhaustion of administrative remedies is required prior to filing a § 2241 habeas petition with this Court. *See Jaworski v. Gutierrez*, 509 F. Supp. 2d 573, 577-78 (N.D.W. Va. 2007) (federal inmates must exhaust administrative remedies prior to seeking § 2241 relief in federal court). While exhaustion is excused where it is demonstrated to be a futility, such as where the BOP has adopted an inflexible policy not amenable to redress through the administrative remedy procedure, here there has been no such demonstration by Muse.

Accordingly, by separate Order which follows, the Petition will be dismissed without prejudice as unexhausted.


 June 10, 2026                                                         /s/
Date                                         Adam B. Abelson
                                             United States District Judge